1 **McGuireWoods LLP**
Sabrina A. Beldner (SBN 221918)
2 Email: sbeldner@mcguirewoods.com
Selwyn Chu (SBN 285568)
3 Email: schu@mcguirewoods.com
Rachel Kermani (SBN 351693)
4 Email: rkermani@mcguirewoods.com
1800 Century Park East, 8th Floor
5 Los Angeles, CA  90067-1501
Telephone:  310.315.8200
6 Facsimile:  310.315.8210

7 Attorneys for Defendant
FERGUSON ENTERPRISES, LLC
8

9                    **UNITED STATES DISTRICT COURT**

10                    **EASTERN DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  JOSEPH RICHARDSON, an individual; | CASE NO. |
| 13          Plaintiff, | [Kern Superior Court Case No. BCV-24-103595] |
| 14    vs. | |
| 15  FERGUSON ENTERPRISES, LLC, a | **DEFENDANT FERGUSON ENTERPRISES, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** |
| 16  Virginia limited liability company registered to conduct business in California; and DOES | |
| 17  1 through 10, inclusive; | |
| 18          Defendants. | |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:**

PLEASE TAKE NOTICE that Defendant Ferguson Enterprises, LLC ("Ferguson" or "Defendant") by and through its undersigned counsel, which rights are hereby fully and expressly reserved, hereby remove the above-entitled action from the Superior Court of the State of California in and for the County of Kern (the "State Court"), in which the action is currently pending, to the United States District Court for the Eastern District of California on the grounds that this Court has jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and all other applicable bases for removal. In support of this Notice of Removal, Defendant avers as follows:

## PLEADING AND PROCEDURES

1. On October 22, 2024, Plaintiff Joseph Richardson ("Plaintiff") filed a Verified Complaint (the "Complaint") in State Court commencing this action against Defendant, in a case styled as *Joseph Richardson, an individual v. Ferguson Enterprises, LLC, a Virginia limited liability company registered to conduct business in California; and DOES 1-10*, Case No. BCV-24-103595 (the "State Court Action"). A true and correct copy of the Complaint is attached hereto as **Exhibit A**.

2. On October 30, 2024, Defendant was personally served with the Complaint and Summons in the State Court Action. A true and correct copy of the Summons served on Defendant is attached hereto as **Exhibit B**.

3. The following additional documents from the State Court Action were served, personally or otherwise, upon Defendant, true and correct copies of which are attached hereto as the Exhibits identified below:

   **Exhibit C:** Civil Case Cover Sheet

   **Exhibit D:** Notice of Assignment/Notice of Order to Show Cause 3.110/Notice of Case Management Conference

   **Exhibit E:** Alternative Dispute Resolution (ADR) Information Packet

4. Defendant is informed and believes that the following additional documents are also on file in the State Court Action, which are attached hereto as the Exhibits identified below:

**Exhibit F:** Proof of Service of Summons as to Ferguson

5. On November 25, 2024, Defendant filed an Answer to Plaintiff's Verified Complaint in the State Court Action, a true and correct copy of which is attached hereto as **Exhibit G**.

6. Defendant is informed and believes that the aforementioned documents and exhibits constitute all of the process, pleadings, and orders on file in the State Court Action.

7. Defendant is informed and believes that it is the only defendant that has been properly served with process in the State Court Action. Defendants DOES 1 through 10 have yet to be identified and are therefore disregarded for purposes of this removal. 28 U.S.C. § 1441(a).

## TIMELINESS OF REMOVAL

8. This action has not previously been removed to federal court.

9. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which provides that such Notices "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." Defendant has filed this Notice of Removal within 30 days of October 30, 2024, the date on which Plaintiff served Defendant with the Complaint. Accordingly, this action is being removed within 30 days of the first date upon which Defendant was served, through service or otherwise, with any paper giving them knowledge that the action was indeed removable.

## REMOVAL JURISDICTION – DIVERSITY

10. This Court has jurisdiction over this action under 28 U.S.C. § 1332(a), 28 U.S.C. § 1441(b), and all other applicable bases for removal. As required by 28 U.S.C. § 1441, Defendant seeks to remove this case to the United States District Court for the Eastern District of California, which is the District Court embracing the place where the State Court Action was filed.

11. Defendant is the only named defendant in this action and has been properly served with process in the State Court Action. Accordingly, Defendant is the only defendant needed to join and consent to this removal.

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), and it is an action that may be removed to this Court by Defendant, because: (1) there is complete diversity of citizenship between Plaintiff, on the one hand, and Defendant, on the other hand; and (2) the amount-

in-controversy exceeds $75,000, exclusive of interest and costs.

13. In accordance with 28 U.S.C. § 1446(d), Defendant will provide contemporaneous written notice of this Notice of Removal to all adverse parties and to the Clerk of the State Court.

## CITIZENSHIP OF PARTIES

14. **Plaintiff's Citizenship.** The Complaint alleges that Plaintiff is an "adult residing in the City of Bakersfield located within the County of Kern." *See* Exh. A (Complaint), ¶ 5. Based thereon, Plaintiff has admitted that he is currently domiciled in California, and Defendants are informed and believe and thereon allege that Plaintiff intends to indefinitely remain living continuously in California. Accordingly, Plaintiff is a resident and citizen of the State of California for purposes of traditional diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled); *see also, e.g.*, *Mondragon v. Capital One Auto Fin.*, 776 F.3d 880, 885-86 (9th Cir. 2013) (person's continuing domicile in a state establishes citizenship for purposes of removal "unless rebutted with sufficient evidence of change"); *Lew v. Moss*, 797 F.2d 747, 751-52 (9th Cir. 1986) (party domiciled in state of party's address); *State Farm Mut. Auto. Ins. Co. v. Dyer,* 19 F.3d 514, 520 (10th Cir. 1994) (residence is *prima facie* evidence of domicile for purposes of determining citizenship).

15. **Defendant Ferguson's Citizenship.** As a limited liability company, Ferguson is a citizen of every state of which its owners/members are citizens. *Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006). Defendant is a Virginia limited liability company with its principal place of business in Newport News, Virginia. *See* California Secretary of State Business search at https://bizfileonline.sos.ca.gov/search/business (Entity Name Searched: "Ferguson Enterprises, LLC"). Its sole owner/member is Ferguson US Holdings, Inc., which is incorporated in Virginia, and which has its principal place of business also in Newport News, Virginia. *See* California Secretary of State Business search at https://bizfileonline.sos.ca.gov/search/business (Entity Name Searched: "Ferguson US Holdings, Inc."). Thus, Defendant was and is a citizen of the State of Virginia for the purpose of determining minimum diversity jurisdiction.[1] 28 U.S.C. § 1332(d)(2).

---

[1] If this Court's jurisdiction is challenged, either by Plaintiff or *sua sponte*, Defendant

**AMOUNT IN CONTROVERSY**

16.     An action may be removed to and remain in federal court if the defendant establishes, by a preponderance of the evidence, that the aggregate amount-in-controversy exceeds the jurisdictional amount. *See Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 683 (9th Cir. 2006); *Bank of Calif. Nat'l Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).[2]  To satisfy the preponderance of the evidence test, a defendant must demonstrate that "it is more likely than not" that the amount-in-controversy is satisfied. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  However, evidentiary submissions are **not** required ***at the time of removal***. *See Arias*, 936 F.3d at 925 (holding that defendant need not prove the amount in controversy in notice of removal). "Instead, evidence showing the amount in controversy is required '*only when* the plaintiff contests, or the court questions, the defendant's allegation.'" *Id.* (emph. added).

17.     Indeed, when a defendant seeks to remove an action to federal court on grounds of diversity jurisdiction, "the defendant's amount-in-controversy allegation should be accepted [as true] when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 547 U.S. 81, 135 S.Ct. 547, 553 (2014); *Arias*, 936 F.3d at 927 ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'").  At the time of removal, the removing defendant's burden of establishing that the amount in controversy exceeds $75,000 is not daunting and does not require the defendant to do extensive research or prove the plaintiff's damages. *See, e.g.*, *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, *16 (C.D. Cal. May 9, 2011).  Thus, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 135 S.Ct. at 554.

18.     A plaintiff's complaint is a court's "first source of reference in determining the amount in controversy." *LaCrosse v. Knight Truck & Trailer Sales, LLC*, 775 F.3d 1200, 1202 (9th Cir. Jan.

---

expressly reserves and does not waive its right to supplement and/or amend its removal submissions to present additional information regarding Defendant's citizenship to demonstrate the existence of the requisite diversity between the parties.

[2] *See, e.g.*, *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 924 (9th Cir. 2019) ("A district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied.").

8, 2015) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). In determining whether the amount-in-controversy exceeds $75,000, the court must presume that the plaintiff will prevail on each and every claim asserted in his or her complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry asks what amount is put "in controversy" by the operative complaint—not what a court or jury might later determine to be the actual amount of damages, if any. *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (defendants "are not stipulating to damages suffered" in a removal petition, "but only estimating the damages that are in controversy," because "jurisdiction must be analyzed on the basis of pleadings filed at the time of removal").[3] The court may also look beyond the complaint to determine whether the amount-in-controversy is met, if necessary. *See Abrego Abrego*, 443 F.3d at 690.

19. The amount in controversy may include general and special compensatory damages. *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018); *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1031 (N.D. Cal. 2002). Further, when attorneys' fees are authorized by statute, they are appropriately part of the calculation of the "amount in controversy" for purposes of removal. *See Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *see also Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Moreover, "a court **must** include **future** attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899 F.3d at 794 (emph. added); *see also Chavez*, 888 F.3d at 414-15 ("[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses **all** relief a court may grant on that complaint if the plaintiff is victorious." (emph. added)). The amount-in-controversy may also include

---

[3] *Scherer v. Equitable Life Assurance Soc'y of the United States,* 347 F.3d 394, 399 (2d Cir. 2003) (the "'amount in controversy' … for jurisdictional purposes, [is] the sum put in controversy by the plaintiff's complaint"); *see also Wilder v. Bank of Am.*, 2014 WL 6896116, *4 (C.D. Cal. Dec. 5, 2014) (determining amount in controversy requires that court assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint because the ultimate inquiry is what amount is put "in controversy" by the complaint, not what a defendant will actually owe).

1  punitive damages and emotional distress. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Kroske,* 432 F.3d at 980.

### *Plaintiff's Complaint Alleges Damages in Excess of the Jurisdictional Threshold*

20.  In this action, Plaintiff's Complaint asserts five separate claims for: (1) disability discrimination; (2) failure to accommodate a disability; (3) failure to engage in the interactive process; (4) retaliation; and (5) wrongful termination in violation of public policy.

21.  Although Plaintiff does not allege a specific dollar amount he seeks to recover in connection with his alleged claims, the Complaint expressly seeks, *among other things*, damages for:

(a) "general, special, consequential damages, back pay, and front pay"; *see* Exh. A (Complaint), ¶ (a), Prayer for Relief, p. 13;

(b) "emotional distress"; *see* Exh. A (Complaint), ¶¶ 41, 49, 55, and 63;

(c) "punitive damages"; *see* Exh. A (Complaint), ¶¶ 42, 50, 56, and 64;

(d) "substantial losses in earnings, other employment opportunities, employment benefits and other damages…to be proven at trial"; *see* Exh. A (Complaint), ¶ 63

(e) "earned wages, overtime compensation, meal and rest period compensation, waiting time compensation"; *Id.* at ¶ (b);

(f) "for payment of all applicable statutory obligations and penalties"; *Id.* at ¶ (c), Prayer for Relief, p. 13;

(g) "pre-judgment interest"; *Id.* at ¶ (d), Prayer for Relief, p. 13;

(h) "costs of suit"; *Id.* at ¶ (e), Prayer for Relief, p. 8; and

(i) "attorneys' fees"; *Id.* at ¶ (f), Prayer for Relief, p. 8;

22.  As discussed above, Defendant may remove this action to federal court notwithstanding Plaintiff's failure to plead a specific dollar amount in controversy. To that end, Defendant's Notice of Removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold. *Dart Cherokee*, 135 S.Ct. at 555; *see Arias*, 936 F.3d at 925 ("[A] a notice of removal 'need not contain evidentiary submissions.' Instead, evidence showing the amount in controversy is required 'only when the plaintiff contests, or the court questions, the defendant's allegation.'"). Moreover, Defendant's allegations regarding federal court

jurisdiction, including the amount in controversy, **must be accepted as true** unless and until otherwise contested. *Accord Dart Cherokee*, 135 S.Ct. at 553.

23. As set forth above, and necessarily assuming that Plaintiff will prevail on each claim asserted in the Complaint, the compensatory damages, emotional distress damages, punitive damages, and statutory attorney's fees sought by Plaintiff establish that the amount-in-controversy exceeds $75,000.[4]

***Compensatory Damages***

24. In his Complaint, Plaintiff alleges that he began working for Defendant as a delivery driver in or around August 30, 2021. *See* Exh. A (Complaint), ¶ 18. Plaintiff further alleges that, on September 1, 2021, he "severely injured his back" during the course of a delivery, was put on a "work restriction" by his physician, and then was put on a "leave of absence" by Defendant. *Id.* at ¶¶ 22-24. Plaintiff further alleges that he returned to work briefly in June of 2023, and that his injury then worsened on June 30, 2023. *Id.* at ¶¶ 28-30. Plaintiff alleges that, on January 10, 2024, he was told by Human Resources that he was "administratively terminated," which he claims was in retaliation for "his requests for temporary accommodation and his disability." ¶¶ 32-33, 61.

25. The Complaint avers that, as a result of Defendant's alleged conduct, Plaintiff "has experienced and will continue to experience severe emotional distress." *Id.* at ¶ 63. Plaintiff also alleges that, due to his termination, "he has and ***will continue to suffer*** substantial losses in earnings, other employment opportunities, employment benefits and other damages." *Id.* at ¶ 63. (Emph. added); *see also id.*, ¶¶ 41, 49, 55 (alleging Plaintiff "suffered and continues to suffer injury, including but not limited to emotional distress."

26. Notably, the amount in controversy is not limited to damages incurred prior to removal. Instead, as the Ninth Circuit has held, the amount in controversy calculation properly includes lost wages incurred ***after the time of removal*** where, as here, they are expressly prayed for

---

[4] The amount in controversy calculations, as set forth below, are based on an assumption *for purposes of removal only* that the allegations of Plaintiff's Complaint regarding his theories of liability are true but without any type of express or implied admission that the conduct alleged in the Complaint occurred, that Plaintiff has suffered any damages, and that such liability in fact exists. *See, e.g., Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) ("Removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry.").

as relief in the operative pleading.  *See Chavez*, 888 F.3d at 417-18 (holding that lost wages incurred after removal were appropriately included in the amount in controversy since they were claimed at the time the case was removed by defendant).  Indeed, in determining the amount in controversy, it is appropriate to consider the amount of lost wages through the time of trial.  *See, e.g.*, *Walker v. Aetna Health & Life Ins. Co.*, 2021 WL 2661449, *8 (E.D. Cal. June 29, 2021) (Ishii, J.) ("Defendants are correct that the amount in controversy calculation properly includes lost wages through trial, since a 'potential defense does not reduce the amount in controversy for purposes of establishing federal jurisdiction'"); *Fisher v. HNTB Corp.*, 2018 WL 6323077, *4 (C.D. Cal. Dec. 3, 2018) (one year of post-removal lost earnings accepted as "date of trial" estimate and held to be properly included in the amount of controversy); *Tiffany v. O'Reilly Auto. Stores, Inc.*, 2013 WL 4894307, *3-4 (E.D. Cal. Sept. 11, 2013) (Karlton, J.) (post-removal lost earnings through trial properly included in the amount in controversy).

27. At the time of Plaintiff's termination, Plaintiff was a full-time employee earning an hourly rate of pay of $20.35. *See* Declaration of Teresa Cooper ("Cooper Decl."), ¶ 4.  While employed by Ferguson, Plaintiff ordinarily worked at least 40 hours per week, plus periodic overtime, and he also availed himself of certain company-provided benefits, including medical insurance and 401(k) participation. *Id*.  Thus, before his termination, Plaintiff earned approximately $814 per week based on a 40-hour workweek, *without including overtime or the value of other employment benefits*.[5]

28. For purposes of removal, Defendant **conservatively** calculates Plaintiff's past lost wages claim from January 25, 2024 through the date of Defendant's filing of their Notice of Removal (i.e., November 29, 2024), at Plaintiff's hourly rate at the time of his termination in January 2024. Based on this estimate, Plaintiff's **past** lost wages amount in controversy is **conservatively** estimated to be not less than **$35,816.00** [1,760 hours (approximately 44 weeks [January 25, 2024 – November

---

[5] If challenged, Defendant expressly reserves and does not waive its right to supplement and/or amend their removal submissions to rely on other, higher, reasonable assumptions and/or estimates in calculating the amount in controversy, including, without limitation, by including any lost benefits in calculating the amount in controversy—which would *increase* the amount in controversy. *See Arias*, 936 F.3d at 922 ("a removing defendant's notice of removal 'need not contain evidentiary submission'"); *Janis v. Health Net, Inc.*, 472 F. App'x 533, 534-35 (9th Cir. Mar. 20, 2012) (holding court erred in refusing to consider evidence of amount in controversy submitted *after* removal in response to a remand motion).

1  29, 2024] x approximately 40 hours/week) x $20.35/hour], particularly since it is **exclusive of**
2  **overtime**.

3  29.  Defendant further estimates Plaintiff will have *future* lost wages (which his Complaint
4  expressly seeks) for only a period of six additional months, from the date of Defendants' filing of
5  their Notice of Removal (November 29, 2024) through May 29, 2025.  Based on this estimate, and
6  without calculating any additional lost wages through trial that Plaintiff is expressly seeking, the
7  amount in controversy on Plaintiff's future lost wages claim from November 29, 2024 to May 29,
8  2025 is **$21,164.00** [1,040 hours (approximately 26 weeks [November 29, 2024 – May 29, 2025] x
9  approximately 40 hours/week) x 20.35/hour], ***exclusive of overtime***.[6]

10  30.  Consequently, without including future lost wages beyond May 29, 2025, the amount
11  in controversy on Plaintiff's prayer for ***past and future lost wages*** from January 25, 2024 to May 29,
12  2025 is reasonably calculated to be **$56,980.00**.

### Emotional Distress Damages

14  31.  Plaintiff also seeks to recover damages for his purported emotional distress.  *See* Exh.
15  A (Complaint), ¶¶ 41, 49, 55, 63; Prayer for Relief, p. 13.

16  32.  Emotional distress damages are appropriately considered by the Court in determining
17  whether the amount in controversy is satisfied for purposes of removal.  *Kroske*, 432 F.3d at 980; *see*

---

[6] These figures are ***extremely*** conservative and in fact ***severely*** underestimated because, as the Ninth Circuit has made clear, lost wages are calculable ***after the time of removal and/or through the time of trial***, and here, Defendant is only relying on Plaintiff's purported lost wages through May 29, 2025, i.e., ***less than 18 months*** after Plaintiff's January 2024 date. *See, e.g.*, *Zamudio v. Aerotek, Inc.*, 2022 WL 458059, *3 (E.D. Cal. Feb. 15, 2022) (Thurston, J.) (denying remand and accepting calculation of ***160 weeks*** of post-removal lost wages through trial as appropriately included in amount-in-controversy calculation); *Thayer v. Securitas Sec. Servs. USA, Inc.*, 2021 WL 1263837, *2 (C.D. Cal. Apr. 6, 2021) (denying remand and holding removing defendant properly estimated lost wages from the date of plaintiff's termination until the date set for trial); *Beltran v. Procare Pharmacy, LLC*, 2020 WL 748643, *3 (C.D. Cal. Feb. 14, 2020) (remand denied; court held that one year of post-removal lost earnings accepted as "conservative estimate" in employment cases and to be properly included in the amount of controversy); *Fisher*, 2018 WL 6323077, at *4 (one year of post-removal lost earnings accepted and held to be properly included in the amount of controversy); *Chavez*, 888 F.3d at 417-18 (holding that lost wages incurred after removal were appropriately included in the amount in controversy since they were claimed at the time the case was removed by defendant); *Garcia v. ACE Cash Express, Inc.*, 2014 WL 2468344, *4 (C.D. Cal. May 30, 2014) (removing defendant properly estimated lost wages for the estimated time between removal and trial); *Tiffany*, 2013 WL 4894307, at *3-4 (denying remand and accepting calculation of ***108 weeks*** of post-removal lost wages through date of trial as appropriately included in amount-in-controversy calculation).

*also, e.g.*, *Simmons*, 209 F.Supp.2d at 1034. In *Kroske*, 432 F.3d at 980, an age discrimination case, the Ninth Circuit held that the trial court properly estimated $25,000 for emotional distress damages for purposes of satisfying the amount-in-controversy where the plaintiff's wage loss was only $55,000. Accordingly, based on Plaintiff's Complaint and the estimate accepted by the Ninth Circuit in *Kroske* (a 2005 case that has not accounted for the inflation in the 19 years since the *Kroske* decision issued), Defendants conservatively estimate that the minimum value of Plaintiff's emotional distress damages for his purported "severe emotional distress," if he were to prevail (as must be presumed for purposes of removal), would be ***at least* $25,000.00** for purposes of calculating the reasonable amount in controversy in this action.[7]

### *Punitive Damages*

33. Plaintiff also seeks punitive damages in connection with his claims. *See* Exh. A (Complaint), ¶¶ 42, 50, 56, 64.

34. The Ninth Circuit has held that punitive damages should be considered by a district court when determining the amount-in-controversy where they are recoverable as a matter of law. *See Gibson*, 261 F.3d at 945. District courts routinely find that "the potential for large punitive damage awards" in employment cases satisfies the $75,000 amount in controversy without even considering other damages. *See Simmons*, 209 F.Supp.2d at 1033; *see also, e.g.*, *Chambers v. Penske Truck Leasing Corp.*, 2011 WL 1459155, *4 (E.D. Cal. Apr. 15, 2011) (Austin, J.) (finding that amount in controversy was satisfied because "punitive damages in employment matters may be substantial"); *Haase v. Aerodynamics Inc.*, 2009 WL 3368519, *4 (E.D. Cal. Oct. 19, 2009) (England, Jr. J.) (acknowledging million-dollar punitive damages awards and denying remand in employment

---

[7] *See Johnson v. Wal-Mart Assocs., Inc.*, 2023 WL 2713988, *7 (C.D. Cal. Mar. 30, 2023) (finding that at least $25,000 was at issue for emotional distress damages where plaintiff expressly sought damages for "pain and suffering"); *Zamudio*, 2022 WL 458059, at *5 (E.D. Cal. Feb. 15, 2022) (denying remand and finding that an award for emotional distress of "at least $25,000 is appropriate for consideration in calculating the amount in controversy); *Narayan v. Compass Grp. USA, Inc.*, 284 F.Supp.3d 1076, 1092 (E.D. Cal. 2018) (England, Jr., J.) (denying remand and finding that $25,000 constituted a "minimal award of emotional distress damages" where plaintiff sought unspecified damages for emotional distress); *Liemandt v. Mega RV Corp.*, 2011 WL 2912831 (Cal. Super. Ct. Feb. 4, 2011) ($385,000 emotional distress award to plaintiff for wrongful termination); *Grodzik v. Calif. Conservation Corps.*, 2010 WL 2734467 (Cal. Super. Ct. June 15, 2010) ($100,000.00 emotional distress award to plaintiff on retaliation claims); *Lemke v. BCI Coca-Cola of Los Angeles*, 2004 WL 5825304 (Cal. Super. Ct. Dec. 1, 2004) ($135,000.00 emotional distress damages awarded in wrongful termination/retaliation action).

1  action, noting that "even a minimum award of punitive damages would satisfy the jurisdictional
2  requirement"). Furthermore, punitive damages verdicts on claims similar to Plaintiff's claims here
3  typically far exceed the $75,000 jurisdictional minimum **on their own**. *See, e.g.*, *Lopez v. Bimbo*
4  *Bakeries USA, Inc.*, 2009 WL 1090375, *10-18 (Cal. Ct. App. Apr. 23, 2009) (affirming *$2 million*
5  punitive damages award on plaintiff's FEHA discrimination/wrongful termination claims).

6      35. In *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 403, 425 (2003), the U.S.
7  Supreme Court held that the longstanding historical practice of setting punitive damages at two, three,
8  or four times the size of compensatory damages, while "not binding," is "instructive," and that
9  "[s]ingle-digit multipliers are more likely to comport with due process." While Defendant could
10 easily utilize the 2:1 ratio that *State Farm* found to be "instructive," other courts in this district have
11 held that a 1:1 ratio between punitive damages and compensatory damages "provides a reasonable, if
12 not 'conservative,' estimate for assessing punitive damages for purposes of calculating the amount in
13 controversy. *See, e.g., Johnson*, 2023 WL 2713988 at *7. Utilizing the smallest ratio of 1:1 (but
14 without conceding its ultimate propriety for use in this case) and basing any potential exemplary
15 damages award solely on the compensatory damages at issue in this action **as alleged herein** (which
16 do not include lost wages or employment benefits through trial), the **minimum** punitive damages
17 award in this action is approximately **$81,980.00** [($56,980 + $25,000) = $81,980].

### *Statutory Attorneys' Fees*

19     36. Plaintiff's Complaint also seeks statutory attorneys' fees in connection with his
20 claims. *See* Exh. A (Complaint), Prayer for Relief, p. 13.

21     37. In the Ninth Circuit, when attorneys' fees are authorized by statute, they are
22 appropriately part of the calculation of the "amount in controversy" for purposes of removal. *Fritsch*,
23 899 F.3d at 794; *see Galt*, 142 F.3d at 1155-56 ("[W]here an underlying statute authorizes an award
24 of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the
25 amount in controversy."). Indeed, "a court ***must*** include **future** attorneys' fees recoverable by statute
26 or contract when assessing whether the amount-in-controversy requirement is met." *Fritsch*, 899
27 F.3d at 794 (emph. added).

28     38. The Court's own knowledge and experience in ruling on prevailing plaintiffs' motions

for attorneys' fees in discrimination and wrongful termination cases, like this action, should indicate that it is "more likely than not" that Plaintiff will seek an attorneys' fees award of **at least <u>$75,000.00</u>** if this case is litigated to judgment in a jury trial.[8] *See, e.g., Lopez,* 2009 WL 1090375, at *18-21 (affirming trial court's award of $1 million in attorneys' fees in wrongful termination action); *Crawford v. DirecTV, Inc.*, 2010 WL 5383296 (Cal. Super. Ct. Sept. 29, 2010) (awarding approximately $160,000 in attorneys' fees in wrongful termination action where the plaintiff's recovered damages were only $175,000). Likewise, based on their own past litigation experience, Defendant reasonably estimates at this juncture that their own attorneys' fees to defend this action through a jury trial and post-trial motions will be well **over** **$75,000.00**.

39. Notwithstanding the above, Defendant **<u>conservatively</u>** estimates that Plaintiff's statutory attorneys' fees to litigate this action through a jury trial would be **at least <u>$30,000.00</u>** ($300 [rate per hour] x 100 hours [hours estimate]) = $30,000.00] for purposes of calculating the reasonable amount in controversy. *See Crockett v. Wal-Mart Assocs., Inc.*, 2024 WL 516713,*4 (E.D. Cal. Feb. 9, 2024) (Nunley, J.) (using a "reasonable rate" of $300 per hour and "an appropriate estimate" of 100 hours to find that a reasonable estimate of attorneys' fees is $30,000); *Owuor v. Wal-Mart Assocs., Inc.*, 2022 WL 1658738, *3 (E.D. Cal. May 25, 2022) (Mueller, J.) (finding that $30,000 ($300 per hour x 100 hours) is a reasonable estimate of attorneys' fees in a single-plaintiff discrimination case).

### *Summary Of Amount In Controversy*

39. Based on the foregoing, and excluding for purposes of this removal any overtime compensation, any lost employment benefits to which Plaintiff claims to be entitled, and any future lost wages beyond **May 29, 2025**, the amount in controversy on Plaintiff's Complaint far exceeds the $75,000 jurisdictional threshold, as follows:

---

[8] Given the other damages at issue in this action, even a minimal award of attorneys' fees would cause the amount in controversy to exceed the jurisdictional minimum in this action. *See, e.g.*, *Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, *6 (C.D. Cal. Mar. 3, 2015) (using a "reasonable rate for employment cases" of $300 per hour and "an appropriate and conservative estimate" of 100 hours to find that attorneys' fees in that case could "reasonably be expected to equal at least $30,000").

| **Damages/Amounts Claimed** | **Amount in Controversy** |
|---|---|
| Past/Future Lost Wages, exclusive of benefits | $56,980.00 |
| Emotional Distress Damages | $25,000.00 |
| Punitive Damages (1:1 ratio of compensatory damages) | $81,980.00 |
| Statutory Attorneys' Fees | $30,000.00 |
| **TOTAL AMOUNT IN CONTROVERSY:** | **$193,960.00[9]** |

## VENUE

40.  This is a civil action originally filed in State Court in Kern County, California. Defendant is informed and believe the events allegedly giving rise to this action occurred within this judicial district. Venue lies in this Court because the action is pending in this district and division. *See* 28 U.S.C. § 1441(a).

41.  Nothing in this Removal Notice is intended or should be construed as any type of express or implied admission by Defendant of any fact, of any validity or merits of any of Plaintiff's claims, causes of action, and allegations, or of any liability for the same, all of which are hereby expressly denied, or as any type of express or implied waiver or limitation of any of Defendant's rights, claims, remedies, and defenses in connection with this action, all of which are hereby fully and expressly reserved.

///

///

---

[9] That the total amount in controversy exceeds the $75,000 jurisdiction minimum to properly remove this action to this Court is further supported by the fact that on November 14, 2024, **Plaintiff's counsel communicated a six-figure settlement demand to counsel for Defendant**. The Ninth Circuit has made clear that settlement demands can be considered for purposes of establishing the amount in controversy for traditional diversity jurisdiction. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (holding that plaintiff's settlement letter wherein he demanded $100,000 for his claims was sufficient to establish the amount in controversy); *Ives v. Allstate Ins. Co.*, 504 F.Supp.3d 1095, 1098 (C.D. Cal. 2020) (denying remand and finding that defendant "appropriately relie[d] on [plaintiff's $249,000.00] settlement demand" to establish the amount in controversy). Accordingly, Plaintiff's "compromise" demand also establishes by a preponderance of the evidence that Plaintiff's purported damages far exceed the jurisdictional threshold.

DATED: November 26, 2024

**McGuireWoods LLP**

By: _____
Sabrina A. Beldner, Esq.
Selwyn Chu, Esq.
Rachel Kermani, Esq.

Attorneys for Defendant
FERGUSON ENTERPRISES, LLC

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and not a party to the within action; my business address is 1800 Century Park East, 8th Floor, Los Angeles, California 90067.

On November 26, 2024, I served the following document(s) described as **DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION FROM STATE COURT** on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Robert Bryson, Esq. | Attorney for Joseph Richardson |
| Law Office of R.T. Bryson, P.C. | |
| 1901 1st Avenue, Suite 162 | rbryson@brysonwoulfelaw.com |
| San Diego, CA 92101 | |

☒ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing with the United States Postal Service. Under that practice, it would be deposited with the United States Postal Service that same day in the ordinary course of business. Such envelope(s) were placed for collection and mailing with postage thereon fully prepaid at Los Angeles, CA, on that same day following ordinary business practices. (C.C.P. § 1013 (a) and 1013a(3))

☐ **BY ELECTRONIC DELIVERY:** I caused said document(s) to be transmitted electronically to the above addressees. (C.C.P. § 1010.6)

☐ **BY OVERNIGHT DELIVERY:** I deposited such document(s) in a box or other facility regularly maintained by the overnight service carrier, or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier with delivery fees paid or provided for, addressed to the person(s) served hereunder. (C.C.P. § 1013(d)(e))

☐ **BY PERSONAL SERVICE:** I caused such envelope(s) to be delivered the addressee(s). (C.C.P. § 1011)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 26, 2024, at Los Angeles, CA.

_____
Matthew Whitney